**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **QUINCY DEANGELO GARDNER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:14-cv-0848** |
| | ) | |
| **DAVID SEXTON, Warden,** | ) | **Judge Trauger** |
| | ) | |
| **Respondent.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Petitioner Quincy, a prisoner in state custody at the Morgan County Correctional Complex in Wartburg, Tennessee, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1, superseded by the signed petition at ECF No. 8). The respondent has filed an answer in opposition to the petition (ECF No. 18), along with a complete copy of the underlying state-court record. The petition is ripe for review, and this court has jurisdiction. 28 U.S.C. § 2241(d). For the reasons set forth herein, the petition will be denied and this matter dismissed.

**I.      PROCEDURAL BACKGROUND**

On March 7, 2007, the petitioner was found guilty by a Davidson County jury of first-degree murder and sentenced to life. (Judgment, ECF No. 17-1, at 24.) The conviction and sentence were affirmed on direct appeal. *State v. Gardner* ("*Gardner I*"), No. M2007-01081-CCA-R3-CD, 2008 WL 2368927 (Tenn. Ct. Crim. App. June 10, 2008), *perm. app. denied* (Tenn. Dec. 8, 2008). On May 19, 2009, the petitioner filed a *pro se* post-conviction petition and supporting memorandum in the state court. (ECF No. 17-11, at 8.) He subsequently filed an amended *pro se* petition. (ECF No. 17-11, at 24.) Post-conviction counsel was appointed, and a second amended petition was filed. (ECF No. 17-1, at 37.) After conducting a hearing, the trial court entered an order denying the petition. (ECF No. 17-11, at 52.) That decision was affirmed as well. *Gardner v. State* ("*Gardner II*"), No. M2012-01483-CCA-R3-PC, 2013 WL 1461487 (Tenn. Ct. Crim. App. April 11, 2013), *perm. app. denied* (Tenn. Sept. 11, 2013).

Gardner filed his § 2254 petition in this court on March 17, 2014 (*See* ECF No. 1-2 (showing outgoing date stamp on the envelope in which the initial petition was submitted to the court).) The respondent concedes that the petition is timely.

## II.    STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[1]

> On October 18, 2005, the Defendant, along with his brother, Marquis Talley, his codefendant, and a "young lady," drove through Litton Apartments. The group was riding in a black Toyota Corolla that belonged to the Defendant's girlfriend. Mr. Talley stated that when they first went to the apartment complex on October 18, the group was looking for "some weed[.]" He also confirmed that the Defendant and his codefendant "might have been drinking that morning" and "maybe doing some of that powder" cocaine. They additionally "might have" been smoking marijuana "on top of that[ .]"

> According to Mr. Talley, while driving through the apartment complex, the Defendant saw a man he recognized and then stated, "There go that dude that robbed me." They left and returned to the Defendant's girlfriend's house, which took about ten minutes.

> The Defendant and codefendant dropped off Mr. Talley and the young lady at the residence, and the two men then returned to Litton Apartments. The car stopped near a large group of people (approximately eight to ten persons, including children) sitting on the porch talking. The victim, twenty-five-year-old Natalie Nicole Madison, was among this group. The Defendant, who was "ducking down," got out of the vehicle and started shooting.

> The Defendant chased one individual, Markeith Calloway, down a hallway, continuing to fire. The Defendant ran behind the building and then returned to the car driven by his codefendant. When he was returning to the car, the Defendant observed the victim lying on the ground. He stopped and asked, "did she get hit, did I hit her[?]" He then got in the car, and they drove away from the apartment complex.

> Eyewitnesses, Victoria Sanford and Markeith Calloway, identified the Defendant as the shooter at trial. According to another eyewitness, Nakkia Blanchard, the shooter stated, "nigger, I bet you won't rob nobody else" before he shot. Alfreda Blanchard [FN1] heard the shooter state similar words: "[Y]ou won't rob me again, nigger, or you won't rob me again. . . ."

>> FN1. At trial, Ms. Blanchard identified the codefendant as the shooter. However, just after the shooting, she was shown a photographic line-up and identified the Defendant as the shooter.

> About ten minutes after the shooting, the Defendant and codefendant returned to

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

the Defendant's girlfriend's house, and the Defendant stated to Mr. Talley that "he think he done killed somebody[;] . . . he think he shot somebody." The next day, Talley, the Defendant, and codefendant went to Lisa Herlein's apartment in Ashland City, requesting to stay with her. While there, the three men went for a walk. Mr. Talley stated that the Defendant did take his weapon with him to Ashland City. When the police arrived at Ms. Herlein's apartment, she consented to a search, and officers discovered the Defendant's weapon.

The victim died as a result of a gunshot wound to the right side of her chest. Cartridge cases recovered from the crime scene were matched to the weapon found at Ms. Herlein's apartment in Ashland City.

The Defendant relayed his version of events to the jury:

I was looking for some marijuana, and I get out the car. The car stopped. I get out the car, and I seen a person that I thought that robbed me. And when I seen him reaching in his coat, I thought he was fixing to pull out the same big old nine millimeter in my face. So I got scared and I threw my hand on my face and I fired a shot.

According to the Defendant, the person who had robbed him threatened to kill him if he ever saw the Defendant again. The Defendant claimed that he only had the gun for protection and chased the individual down the hallway because he was afraid and did not "want him to stop and take a shot back at" him. When he shot the second time, he aimed at the individual's legs. He also stated that he did not realize he had "hit" someone else and that he gave the gun to Mr. Talley.

*Gardner I*, 2008 WL 2368927, at *1–2.

## III.    ISSUES PRESENTED FOR REVIEW

In his present petition, Gardner asserts the following claims for relief:

1. That the proof at trial was insufficient to overcome the petitioner's claims of self-defense and intoxication at the time of the crime.

2. That trial counsel was ineffective for failing to

(a) file a motion to suppress the firearm associated with the shooting;

(b) procure a psychiatric evaluation of the petitioner;

(c) request a jury instruction on voluntary intoxication;

(d) adequately prepare the petitioner to testify or explain to the petitioner the consequences of testifying at trial;

(e) relay the state's plea offer to the petitioner;

## IV.    STANDARD OF REVIEW

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. §

2254(b)(1). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). The respondent concedes in this case that the petitioner exhausted each of his claims by raising them in the Tennessee Court of Criminal Appeals.[2]

A person in custody pursuant to a state-court judgment is entitled to the writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d), which provides that relief may not be granted in the district court with respect to any claim previously adjudicated in the state courts unless the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). In other words, a federal court's review of the state court's adjudication of a petitioner's claims is quite limited. Further, this court must presume the correctness of the state court's factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

---

[2] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, the court will turn to the examination of the claims raised in Gardner's petition for habeas relief.

## V.     ANALYSIS AND DISCUSSION

### A.     Insufficiency of the Evidence

Gardner argues that the evidence was insufficient to support the guilty verdict. More specifically, he contends that the proof offered by the government's witnesses at trial was inconsistent, and that the proof was insufficient to "overcome petitioner's claims of self-defense and intoxication at the time of the alleged crime." (ECF No. 8, at 5.)

The petitioner raised this argument in his direct appeal. The Tennessee Court of Criminal Appeals, in considering the argument, referenced and applied the correct federal standard as articulated by the United States Supreme Court: that a court "must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, [it] determine[s] that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Gardner I*, 2008 WL 2368927, at *2 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The court then reviewed the elements of the crime charged and the defenses raised, and summarized the evidence in support of the conviction as follows, before concluding that the evidence amply supported Gardner's conviction:

> Felony murder, for the purposes of this case, is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder. . . ." Tenn. Code Ann. § 39-13-202(a)(2). Tennessee Code Annotated section 39-13-202 also provides that "[n]o culpable mental state is required for conviction under subdivision (a)(2) . . . except the intent to commit the enumerated offenses or acts. . . ." Tenn. Code Ann. § 39-13-202(b).

> The underlying felony in this case was attempted first degree murder. First degree murder is defined as "[a] premeditated and intentional killing of another. . . ." Tenn. Code Ann. § 39-13-201(a)(1). A premeditated killing is one "done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). To be premeditated, the intent to kill must have been formed before the act itself, and the accused must be sufficiently free from excitement and passion. Tenn. Code Ann. § 39-13-202(d). An intentional killing requires that the person have the conscious objective or desire to cause the death of the victim. Tenn. Code Ann. § 39-11-106(a)(18). Whether premeditation is present is a question of fact for the jury, and it may be determined from the circumstances surrounding the offense. Our supreme court has noted the following non-exclusive factors that demonstrate the existence of premeditation: the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, declarations by the defendant of an intent to kill, evidence of procurement of a weapon, preparations before the killing for concealment of the crime, and calmness immediately after the killing.

> Tennessee Code Annotated section 39-12-101 outlines the crime of "criminal attempt." Criminal attempt is when:

> A person . . . acting with the kind of culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

> The Defendant argues that the evidence showed he shot in self-defense. Thus, he argues that the killing was legally justified. Tennessee Code Annotated section 39-11-611(a) provides as follows:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and

must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. § 39-11-611(a).

It is well settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the trier of fact. As such, in the context of judicial review of the jury verdict, in order to prevail, the defendant must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal. Moreover, the State has the burden of negating any defense if admissible evidence is introduced supporting the defense. Tenn. Code Ann. § 39-11-201(a)(3). It is clearly within the prerogative of the jury to reject a claim of self-defense.

The Defendant asserts that, based upon the evidence of self-defense presented at trial, he was legally justified in shooting. He further urges us to consider the discrepancies between the evidence offered by the State's witnesses.

Examining the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to sustain the Defendant's conviction for felony murder. The proof showed that the killing of the victim occurred as a result of the Defendant's shooting into a group of people he believed included the man who had previously robbed him. According to testimony presented at trial, the Defendant was riding through the apartment complex and observed the man he believed had robbed him on a prior occasion. Thereafter, he returned to the apartments in a car driven by his codefendant and jumped out of the vehicle, made statements of revenge, and started firing upon the crowd on the porch. He chased Mr. Calloway down the hallway, shooting again. Prior to the shooting, the Defendant stated that he desired to return to the apartment complex to exact revenge upon the robber. Following the shooting, the Defendant took his weapon and went to Ashland City. The jury heard testimony surrounding the circumstances of the shooting and from two eyewitnesses that the Defendant was the shooter. As noted above, this Court will not reweigh or re-evaluate the evidence. Furthermore, questions about the credibility of witnesses, the weight and value of the evidence, as well as factual issues raised by the evidence are to be resolved by the trier of fact.

The jury was not obligated to accept the Defendant's testimony as to self-defense. The issue of self-defense in a murder prosecution is always a question of fact to be determined by the trier of fact. In summary, there was ample evidence to support the jury's finding in this case that the killing occurred during the attempt to perpetrate the first degree murder of Markeith Calloway, whom the Defendant apparently believed to be the man who had previously robbed him at gunpoint.

Finally, the Defendant asserts in his brief that Mr. Talley's testimony provided sufficient evidence of voluntary intoxication. Our Code provides that, while voluntary intoxication is not a defense to prosecution for an offense, evidence of such intoxication may be admitted to negate a culpable mental state. Tenn. Code Ann. § 39-11-503(a). . . . [W]hether a defendant is too intoxicated to form the requisite mental state is a question reserved for the jury. The jury heard Mr. Talley's testimony and obviously concluded that the Defendant was not so intoxicated as to be unable to form the required mental state. We conclude that the evidence was sufficient to establish the certainty of guilt of the accused.

*Id.* at *3–5 (footnote, internal quotation marks and citations to state case law omitted).

This court finds that the Tennessee Court of Criminal Appeals reasonably applied clearly held federal law as articulated by the Supreme Court in *Virginia v. Jackson* to the facts in this case, and that

the state court's decision was based on a reasonable "determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2). *See Pinchon v. Myers*, 615 F.3d 631, 643–44 (6th Cir. 2010) ("In a habeas proceeding, however, we cannot simply conduct a *de novo* review of the state court's application of that rule [articulated in *Jackson v. Virginia*], but must review its sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA."); *Getsy v. Mitchell*, 495 F.3d 295, 315–16 (6th Cir. 2007) (en banc) ("Whether [the petitioner] is entitled to habeas relief ultimately depends on whether the [state court]'s denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence."). While the petitioner himself testified that he acted in self-defense, and his brother testified that the petitioner had been drinking and possibly doing cocaine that morning, the other evidence in the record, including the petitioner's own statements, did not corroborate the petitioner's claims that he acted in self-defense or that he was so intoxicated he could not form an intent to kill. The jury was entitled not to credit the petitioner's testimony and instead to believe the witnesses who testified that the petitioner began shooting and yelling basically from the time he exited the car in front of the apartment building where the victim and others were gathered.

The evidence was clearly sufficient to support the verdict, and the state court's determination in that regard did not violate the petitioner's constitutional right to due process. The petitioner is not entitled to relief on the basis of this claim.

**B.     Ineffective Assistance of Counsel**

The petitioner raises five claims of ineffective assistance of counsel in his habeas petition, and he raised all five of these claims in his post-conviction proceedings as well: that counsel was ineffective for failing to (1) file a motion to suppress the firearm associated with the shooting; (2) procure a psychiatric evaluation of the petitioner; (3) submit or request a jury instruction regarding the petitioner's voluntary intoxication at the time of the shooting; (4) adequately explain to the petitioner the consequences of testifying at trial; and (5) notify the petitioner of the state's plea offer. *See Gardner II*, 2013 WL 1461487, at *7–9.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was

deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is *not* whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

In addressing the petitioner's claims for ineffective assistance of counsel in this case, the Tennessee Court of Criminal Appeals first articulated and discussed at some length the standard for proving ineffective assistance of counsel, as established by the Supreme Court in *Strickland. See Gardner II*, 2013 WL 1461487, at *6. Having articulated the appropriate standard, the court then addressed each of the petitioner's claims, as discussed below, and concluded that the petitioner had failed to prove ineffective assistance of counsel in connection with any of them. The question before this court is whether that court's application of *Strickland* was unreasonable.

### (1) Failure to File a Motion to Suppress

The petitioner argues that his trial counsel was ineffective for failing to file a motion to suppress the gun recovered by police at Lisa Herlein's apartment in Ashland City, because it did not have the petitioner's fingerprints on it. Regarding this claim, trial counsel testified at the post-conviction hearing that

he did not file a motion to suppress the firearm in question because the gun had been lawfully seized. (Post-Conviction Tr. at 17, ECF No. 17-12, at 18.) He also testified that he tried to explain this to the petitioner and that the petitioner seemed to understand. (*Id.*) In its written order denying the petitioner's petition, the post-conviction court credited trial counsel's testimony and further found that there was no legal basis to argue for the suppression of the firearm. (Order at 8, ECF No. 17-11, at 59.)

The appellate court concluded that the evidence did not preponderate against the post-conviction court's factual findings and that the petitioner failed to establish that trial counsel was deficient.

### (2) Failure to Procure a Psychiatric Evaluation of the Petitioner

The petitioner argues that his counsel failed to procure a psychiatric evaluation of him prior to trial, even though counsel was "well aware that the petitioner had mental issues" and had "received a[n] SSI mental disability check since he was 16 years old." (ECF No. 8, at 8.)

Trial counsel testified at the post-conviction hearing that, in fact, he filed a motion to have the petitioner evaluated and he was evaluated at Vanderbilt University. The evaluation team "sent a letter back saying they found him both sane at the time of the offense and capable of assisting in his own defense." (Post-Conviction Hr'g Tr. at 16, ECF No. 17-12, at 17.) The petitioner, on the other hand, testified at the post-conviction hearing that he did not remember being evaluated. The post-conviction court again credited counsel's testimony and found it to be supported by the "Report of Competency and Insanity Evaluations" that was admitted as an exhibit at the hearing. The court therefore found that the evidence contradicted the petitioner's claim that his counsel was deficient for failing to procure a mental-health evaluation. The appellate court found that the evidence did not preponderate against the post-conviction court's finding that trial counsel's performance was not deficient and therefore did not reach the question of prejudice.

### (3) Failure to Submit a Voluntary-Intoxication Jury Instruction

The petitioner claims his attorney "knew prior to trial that petitioner had admittedly been under the influence of drugs and alcohol during the perpetration of the crime" but failed to request that the jury be instructed that he could not have "acted intentionally and with premeditation." (ECF No. 8, at 11.) He testified at the post-conviction hearing that he was "so drunk and so high that [he] blacked out" and "remember[ed] nothing" about the shooting. (Post-Conviction Hr'g Tr. at 6, ECF No. 17-12, at 7.) Trial

counsel testified that, to the best of his recollection, his client might have smoked a joint the morning of the shooting, "but there was nothing to indicate that he was so intoxicated that he didn't know what he was doing." (*Id.* at 18, ECF No. 17-12, at 19.) Trial counsel further averred that his client had related to him his version of exactly what had happened at the shooting. He therefore saw no grounds for requesting an intoxication instruction.

The post-conviction court credited trial counsel's testimony and concluded, based on the petitioner's testimony at trial and evidence presented during the post-conviction hearing that the evidence conclusively refuted the petitioner's claim. The appellate court affirmed based on its starting presumption that trial counsel's conduct was reasonable under the circumstances and the petitioner's failure to establish otherwise. Finding that counsel's performance was not deficient, it did not reach the issue of prejudice.

### (4) Failure to Explain the Consequences of Testifying at Trial

The petitioner asserts that his counsel was deficient insofar as he failed to adequately prepare his client "as to how to reveal his side of the story as it pertained to self defense" and did not "coach" the petitioner "on what questions the prosecution would ask and how to properly answer them." (ECF No. 8, at 12.) At the post-conviction hearing, however, the petitioner testified that he did not remember the shooting incident at all and that, at trial, he "just repeated what [trial counsel] told [him] to say." (Post-Conviction Hr'g Tr. at 15, ECF No. 17-12, at 16.) Trial counsel testified that he talked to his client about his prior record, that his client was "adamant to tell his story," and that in counsel's experience, the only way to get a state-of-mind defense in front of the jury, such as a claim that a shooting was in self-defense, was to allow the defendant to testify. The post-conviction court credited trial counsel's testimony, noting that "Petitioner now is unable to remember not only his trial testimony but what happened on the night of the offense. Accordingly, Petitioner has failed to meet his burden of clear and convincing evidence." (Post-Conviction Order at 11, ECF No. 17-11, at 62.) The court of appeals again found that the petitioner failed to establish that his trial counsel's conduct was deficient.

### (5) Failure to Notify the Petitioner of the State's Plea Offer

Finally, the petitioner claims that counsel "failed to advise the petitioner about a plea offer. Had counsel relayed this offer the petitioner could have taken said plea thus resulting in a lesser sentence."

(ECF No. 8, at 14 (citing *Lafler v. Cooper*, 566 U.S. ----, 132 S. Ct. 1376 (2012)).) Under *Lafler*, a petitioner who argues his counsel was ineffective for failing to relay a plea offer cannot establish prejudice unless he also alleges the probability that he *would* have accepted the offer, not merely that he *could* have. *See Missouri v. Frye*, ----- U.S. ----, 132 S. Ct. 1399, 1409 (2012) (holding that, to satisfy the prejudice requirement under *Strickland*, habeas petitioners must "demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel"). On this basis alone, the petitioner has failed to establish that he is entitled to relief.

Moreover, at the hearing, trial counsel testified that the plea offer was "out of range, take forty years at one hundred percent," that he relayed this offer to his client, and that the petitioner rejected it. (Post-Conviction Hr'g Tr. at 20, ECF No. 17-12, at 21.) The trial court noted that, although the petitioner claimed he was not aware of the plea offer made by the state, "as shown throughout the entirety of Petitioner's testimony, he is unable to recall many details, especially when questioned by either the State or the Court." (Post-Conviction Order at 11, ECF No. 17-11, at 62.) The court credited trial counsel's testimony that he had relayed the offer and therefore found that the petitioner failed to establish deficient conduct. The court of criminal appeals deferred to the post-conviction court's credibility finding and again found that the petitioner failed to establish deficient performance by his trial counsel.

### (6) Conclusion: Ineffective-Assistance Claims

This court has examined the state court rulings on all these issues and concludes that the petitioner has not shown that the state appellate court's decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law," or that they were "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Accordingly, Gardner is not entitled to relief on the basis of any of his ineffective-assistance claims.

## VI.    CONCLUSION

For the reasons set forth herein, Quincy Deangelo Gardner's petition under § 2254 will be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a

final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

For the reasons set forth herein, the court finds that Gardner has not made a substantial showing of the denial of a constitutional right and that his claims do not merit further review. Consequently, a COA will not issue.

An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge